# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MEGAN RIMS,** | ) | |
| **Administrator of the ESTATE OF** | ) | |
| **JEREMY SCOTT RAWLINS, and Megan** | ) | |
| **RIMS, widow of Jeremy Scott Rawlins,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **No.** |
| | ) | |
| | ) | |
| **CARBON COUNTY,** | ) | |
| **CARBON COUNTY CORRECTIONAL** | ) | |
| **FACILITY,JAMES YOUNGKIN,** | ) | |
| **HARLEY GESSAT,** | ) | |
| **NICOLAS SHORTEN,** | ) | |
| **DEREK GEORGE, FRANK SHUBECK,** | ) | |
| **JOHN DOE DEFENDANTS 1-10** | ) | |
| **Individually and in their capacities as** | ) | |
| **Correctional officers at the Carbon County** | ) | |
| **Correctional Facility, JOHN DOE** | ) | |
| **Defendants 11-20 individually and in their** | ) | |
| **capacity as employees responsible for** | ) | |
| **health screenings and providing medical** | ) | |
| **care,** | ) | |

**Defendants.**

**FILED ON BEHALF OF:**
**MEGAN RIMS**
**Administrator of the**
**Estate of Jeremy Scott**
**Rawlins**

1

<u>**COMPLAINT**</u>

Plaintiffs, **MEGAN RIMS, Administrator of the ESTATE OF JEREMY SCOTT RAWLINS and MEGAN RIMS, widow of Jeremy Scott Rawlins,** by and through her attorneys, **MOORE, BECKER, SMARTO & ACOSTA, P.C.,** and **JOHN P. SMARTO, ESQ.,** alleges as follows:

## I.   <u>PRELIMINARY STATEMENT</u>

1.      This is an action for civil redress relative to constitutional violations perpetrated by the Defendants.

## II.   <u>NATURE OF THE ACTION</u>

2.      This is an action for monetary damages and other appropriate relief.

## III.   <u>JURISDICTION AND VENUE</u>

3.      This action arises under the Eighth and Fourteenth Amendments to the Constitution of the United States of America, and under the laws of the United States of America, specifically,  42, U.S.C. §1983 to redress the

deprivation, under color of State law, of rights secured by the United States Constitution. This court has jurisdiction in this case pursuant to 28 U.S.C. § §1331 and 1343. The Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to adjudicate state law claims. Venue is proper in this District under 28 U.S.C. §1391(b), because the Defendants' unlawful acts and omissions giving rise to these claims occurred in this District.

## IV.   <u>PARTIES</u>

4.      Plaintiffs, **MEGAN RIMS, Administrator of the ESTATE OF JEREMY SCOTT RAWLINS**, is the personal representative and widow **of JEREMY SCOTT RAWLINS** (herein referred to as **"RAWLINS**), who committed suicide on October 6, 2022 while incarcerated within the prison known as the **CARBON COUNTY CORRECTIONAL FACILITY** located in Nesquehoning, Pennsylvania. **MEGAN RIMS** is also the widow of the decedent.

5.      Defendant **FRANK SHUBECK** was employed as Director of Treatment at the Carbon County Correctional Facility, 331 Broad Street, Nesquehoning, Pennsylvania, 18240 at the time of the incident more fully described herein.

6.      Defendant  **JAMES YOUNGKIN** is employed as a Warden by Carbon County at the Carbon County Correctional Facility, 331 Broad Street,

Nesquehoning, Pennsylvania, 18240.

7.     Defendant **HARLEY GESSAT,** at the time of the incident, was employed as deputy Warden by Carbon County at the Carbon County Correctional Facility, 331Broad Street, Nesquehoning, Pennsylvania, 18240.

8.     Defendant **DEREK GEORGE** is employed as Deputy Warden by Carbon County and Carbon County Correctional Facility, 331 Broad Street, Nesquehoning, Pennsylvania, 18240.

9.     Defendant **NICOLAS SHORTEN** is employed as a correctional officer by Carbon County at Carbon County Correctional Facility, 331 Broad Street, Nesquehoning, Pennsylvania, 18240. This Defendant was on duty at the time Rawlins committed suicide on October 6, 2022 and was the person who last saw decedent alive and also discovered him dead in his cell.

10.    **JOHN DOE** Defendants 1-10 are correctional officers responsible for the safety of inmates at the Carbon County Correctional Facility.

11.    **JOHN DOE** Defendants 11-20 were responsible for providing medical care to Plaintiff.

12.    **CARBON COUNTY CORRECTINAL FACILITY**  is a prison owned and operated by Carbon County.

13.    Defendant **CARBON COUNTY** is a sixth-class county duly

organized and existing, under, and by virtue of the laws of the Commonwealth of Pennsylvania. It owns and operates a prison known as the Carbon County Correctional Facility located at 331 Broad Street, Nesquehoning, Pennsylvania, 18240. At all times relevant hereto Carbon County provided medical care for inmates incarcerated therein. Carbon County did not contract its inmate medical care to an independent medical provider at the time of the incident herein described.

14.   At all relevant times, the Defendants were acting under color of state law and bear a non-delegable constitutional duty to provide adequate medical treatment to inmates and to monitor those incarcerated who demonstrate suicidal tendencies and vulnerabilities.

15.   At all relevant times, the actions taken by all the Defendants, particularly NICOLAS SHORTEN and the supervisor Defendants, were deliberately indifferent to a serious medical need; all, specifically the Warden Youngkin, knew that Rawlins was suicidal, and their inaction constituted a conscious disregard of a substantial risk resulting Rawlins' death in violation his Eighth and/or Fourteenth Amendment constitutional and statutory rights.

16.   All of the following acts, omissions and/or commissions were performed by Defendants individually, or by their agents, servants or employees acting within the scope of their agency and/or employment.

## V.   FACTUAL BACKGROUND

21.   Plaintiff **MEGAN C. RIMS** is the Administrator of the Estate of Jeremy Scott Rawlins, Deceased. She is also the widow of Jeremy Rawlins.

22.   Letters of Administration were issued by the Register of Wills of the Carbon County Court of Common Pleas on September 27, 2024.

23.   Said Letters of Administration appointed MEGAN RIMS as the personal representative of the Estate of  **JEREMY SCOTT RAWLINS** at the Carbon County Register Wills at No. 24-RW-0357.

24.   On September 25, 2022 Rawlins was detained by the Langford Borough Police on outstanding warrants based on delinquent payments of costs and fines on a 2021 charge pursuant to 35 § 780-113 §§ A16 for which Rawlins pled guilty on December 3, 2021 for which he was sentenced to one year probation and 50 hours of community service. Probation was to run concurrent with another charge under the same section of the Crime Code earlier in the year 2021. He was also to undergo comprehensive drug and alcohol evaluation and undergo treatment.

6

25.    At the time of the stop, there were outstanding warrants for Rawlins based on a prior conviction for failure to pay fines and costs. He was taken into custody and transported to the Carbon County Correctional Facility.

26.    At the time of his arrest, Rawlins was demonstrated symptoms of 'dope sickness.'

27.    The Carbon County Correctional Facility was aware Rawlins' history of drug abuse, depression, and family history of suicide as he had been incarcerated at the facility on numerous occasions prior to September 25, 2022. At the time of his booking, Rawlins was 'dope sick' and in withdrawal.

## COUNT I

### AS TO ALL DEFENDANTS:
### DELIBERATE INDIFFERENCE TO A SERIOUS
### MEDICAL NEED AND VULNERABILITY TO SUICIDE IN VIOLATION
### OF RAWLINS' EIGHTH and FOURTEENTH AMENDMENT RIGHTS [42
### U.S.C. §1983] FAILURE TO PROVIDE PROPER MEDICAL CARE

31.    The allegations set forth in paragraphs 1 through 27 are incorporated herein as though fully set forth at length.

32.    The Defendants were aware that prisoners with serious mental illness and/or vulnerability to suicide were more likely to engage in self-harm and

suicide attempts when placed in solitary confinement.

33.     At the time Rawlins was lodged in the Carbon County Correctional Facility, he 34 years of age and was in good physical health, except for suffering from drug addiction and depression.

34.     Rawlins, while in the Carbon County Correctional Facility, may have been waiting for criminal charges to be filed and was yet to be convicted of anything.

35.     Accordingly, if he is deemed a pre-trial detainee on a new charge, he is guaranteed the right, under the due process clause of the Fourteenth Amendment to proper medical care, including mental health care.

36.      Rawlins is also deemed to be a prisoner who technically had already been convicted of a crime since he was arrested initially on a warrant as a result of a prior conviction for failure to pay costs and fines, he was guaranteed the right of the Eighth Amendment to the United States Constitution to be protected from cruel and unusual punishment. If he is deemed a pretrial detainee, Rawlins is afforded the protection of the Due Process clause of the 14th Amendment to the United States Constitution and Plaintiffs plead the latter in the alternative.

37.     While in the Carbon County Correctional Facility,  Rawlins was suffering from drug withdrawal and was being treated for such.

8

38.     Rawlins was slowly recovering from his drug abuse.

39.     Rawlins became increasingly aware that he needed drug rehabilitation and mental health treatment and told this to his wife.

40.     According to his widow, Megan Rims, Rawlins when he arrived at the Carbon County Correctional Facility, he had been placed in a cell at booking. Booking consists of a limited amount of jail cells wherein inmates can be observed easily.

41.     Rawlins was initially sent to general population according to his widow.

42.     Plaintiff alleges that Rawlins was depressed when she spoke to him by telephone on or about September 27, 2022.

43.     During that conversation, Rawlins apologized for causing disruption in the family and promised to go to a drug rehabilitation which was being discussed with prison personnel.

44.     At the time of this conversation, Rawlins said he was experiencing drug withdrawal but was feeling better physically.

45.      Between September 27 and October 3, 2022, Rawlins' incarceration was uneventful, but it is unclear whether he was being treated for clinical depression.

46.     On October 4, 2022, Rawlins received a visit from the mother of his two children, Ashley Thomas. This was told to Megan Rims by Warden Youngkin.

47.     During this visit, Ms. Thomas disclosed the Rawlins that his best friend, Wayne, has died of an overdose.

48.     The news had a devastating mental effect on Rawlins.

49.     After this visit with Ashley Thomas, Rawlins expressed his desire to kill himself to prison personnel.

50.     According to what Warden Youngkin told Megan Rims, Rawlins was immediately moved to private cell so that he could be observed more closely.

51.     Rawlins was on a "suicide watch" and was apparently observed by officers every fifteen (15) minutes.

52.     Between October 4 and October 6, 2022, Rawlins was supposed to be routinely observed as an inmate on suicide watch.

53.     During this time, it is unclear whether Rawlins was being medically treated for clinical depression but remained on suicide watch. Upon information and belief, Rawlins was not given any medication to help his

depression or therapy of any kind to aid him during an emotional time.

54.     On October 6, 2022, Correctional Officer Nicolas Shorten was monitoring the inmates segregated from general population, including Rawlins.

55.     According to Defendant Shorten, he last observed Rawlins during a bed check at 15:55 PM or 3:55 PM in the late afternoon of October 6, 2022. He stated to the Coroner that he observed Rawlins "sitting on his bed, looking at the wall."

56.     After this bed check by Defendant Shorten, Rawlins took his bed sheet and tied it around the top rail at the corner of his metal bunk, and then tied the sheet around his neck.

57.     According to Nicolas Shorten, Rawlins 'leaned into it,' and asphyxiated himself.

58.     According to the death certificate, the time of death is stated as "unrecorded, at 16:00 or 6:00 PM on October 6, 2022.

59.     It was Defendant Nicolas Shorten who found Rawlins.

60.     The time of death is also unclear. Even if Rawlins was discovered at 6:00 PM, that indicated that Shorten did not perform his duty of

observation of an inmate on suicide watch for 2 hours and was deliberately indifferent to an inmate with suicidal vulnerabilities.

61.    On the evening of October 6, 2022, Megan Rims received a phone call from Warden Youngkin reporting the death of her husband.

62.    Warden Youngkin apologized for this incident and stated specifically that "we all know Jeremy had problems and that is why he was in medical…."

63.    Warden Youngkin also stated to Megan Rims that "I am sorry, I knew he was one we had to watch..."

64.    Warden Youngkin also stated that her husband was "hanging for 6 hours before he was discovered…" If true, this is indicative at a minimum deliberate indifference and a failure to observe an inmate segregated from general population on suicide watch.

52.    Each Defendant showed deliberate indifference and disregard of the risk to Rawlins 'mental health and suicidal tendencies that was presented to them.

53.    Supervisory Defendants Shubeck, Youngkin, Gessat, and George are aware of the policy and procedure in the conduct of the prison medical care program and was aware of the same in October of 2022.

54.     Defendants Frank Shubeck, Warden Youngkin, Deputy Wardens Gessat and George as well as Carbon County, owe a constitutional duty to the inmates, and in particular Jeremy Rawlins to assure that necessary and adequate medical treatment is given, in this case, mental health treatment, and if necessary, transfer to a facility for proper treatment of an incarcerated person at high risk of suicide.

55.     Rawlins should have been seen by a doctor, trained mental health medical personnel, or transferred to a facility to treat his mental health condition.

56.     Between October 4 and specifically on October 6, 2022, Defendants were indifferent to vulnerability to suicide, in repeated violation of his Eighth Amendment and/or Fourteenth Amendment constitutional rights.

57.     To the extent to which the Defendants took any action to address Rawlins' serious mental health needs or condition, the Defendants delayed in so doing.

58.     The delay caused Rawlins' hours of unnecessary and mental anguish, depression, and ultimately caused his untimely death.

59.     The Defendants, by ignoring Rawlins on October 6, 2022, in this situation and by failing to provide proper observation in violation of the

Defendants' own policies and procedure, acted with deliberate indifference to a serious mental health condition and the medical needs of Rawlins which resulted in his suicide.

60.     In addition to the supervisory employees, the  JOHN DOE Defendants, correctional officers, and medical personnel, were aware that there was a substantial risk to Rawlins' life if he went untreated and unobserved for very long, otherwise, he would have been segregated and designated a suicide threat.

61.     They did nothing. Therefore, the nurses, physician's assistant, and the correctional officers in the employ of Carbon County acted with deliberate indifference to the serious health condition and health needs of Rawlins.

62.     Further, Carbon County had a policy, practice, and customs of insufficiently staffing its correctional facility with medical personnel thereby showing deliberate indifference to the serious health needs of its inmates, including Rawlins. Furthermore, the Carbon County Correctional Facility has developed a policy, practice, and custom of deliberate indifference to the medical needs of its inmates. The prison has done so in order to save money on inmate care.

63.     The Carbon County Correctional Facility also has a policy, practice, and custom of having insufficient protocol and procedures for treatment of mental health emergencies particularly in a situation such as that of Jeremy

14

Rawlins. It is believed, and therefore averred, that prison officials at the Carbon County Correctional Facility have a custom of not only failing to treat patients with suicidal vulnerability, but routine care, thereby creating a policy, custom and practice to which the County and its director of treatment, Frank Shubeck, Warden Youngkin Deputy Wardens Gessat and George have acquiesced.

64.     Said policy, practice and custom constitutes deliberate indifference to the mental health needs of its inmates, including Rawlins.

65.     The Defendants' deliberate indifference by failing to treat or transfer Rawlins for proper care, caused him to act on his suicidal vulnerabilities.

66.     All Defendants were deliberately indifferent to the serious medical needs of Rawlins. It should be sufficiently clear that a reasonable prison official would comprehend that by denying medical care and observation, Rawlins was exposed to undue suffering or threat of tangible residual injury, which, in the end, proved to be fatal. The Defendant prison officials, correctional officers and medical personnel denied Rawlins proper mental health care by failing to treat, refer to a physician, or transfer Rawlins for proper care, causing him to unnecessarily suffer before dying from suicide.

67.     Rawlins' death was unnecessary and easily avoidable.

68.     Had the Defendants and their employees, agents, and servants,

15

not acted with deliberate indifference to the obvious and serious health needs of Rawlins and provided proper medical attention, he would not have died. By October 6, 2022, Rawlins was mentally deteriorating and at serious risk of suicide.

69.   He was 34 years old.

70.   Such acts and omissions of the Defendants violated Rawlins' constitutional rights guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution. The Defendants knew that by failing to treat the effects of acute depression, manifesting itself in verbal threats of suicide, a tragedy such as what occurred was foreseeable.

71.   Moreover, the Defendants' conduct, specifically Nicolas Shorten, in ignoring Rawlins on October 6, 2022, and his symptoms of depression for such a length of time was outrageous, wanton, and malicious, and in reckless disregard of his rights.

72.   As a direct and proximate result of the Defendants' violation of Rawlins' constitutional rights, Jeremy Rawlins sustained damages, including, but not limited to:

   a.   Compensatory damages for their unlawful,
        wanton, and depraved conduct in causing Rawlins' death;

   b.   the mental suffering, fear, severe emotional distress, and
        humiliation for at least two (2) days;

c.  the loss and enjoyment of Rawlins' life;

d.  future economic damages of Rawlins;

e.  funeral and related expenses; and

f.  Pursuant to 42 USC §1988, an award of reasonable attorneys' fees.

73.  The acts and omissions of all defendants demonstrate a reckless and wanton disregard for the rights of Jeremy Scott Rawlins. Accordingly, the Plaintiff demands punitive damages against the individual defendants.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount to be determined by a jury of twelve and such other and further relief as this Honorable Court may deem just and proper.

**COUNT II**

<u>**AS TO ALL DEFENDANTS:**</u>
<u>**DELIBERATE INDIFFERENCE TO DECEDENT'S**</u>
<u>**8TH AMENDMENT RIGHTS AGAINST**</u>
<u>**CRUEL AND UNUSUAL PUNISHMENT and 14TH AMENDMENT DUE**</u>
<u>**PROCESS RIGHTS [42 U.S.C. § 1983]- INFLICTING WANTON AND**</u>
<u>**UNNECESSARY PAIN.**</u>

74     Plaintiff incorporates by reference paragraphs 1 as though 73 as though the same where here fully set forth at length.

75.     The neglect of RAWLINS' medical condition between October 4 and October 6, 2022 was both a sufficiently serious constitutional deprivation and deliberate indifference by the Defendant Correctional Officers, Prison Supervisory Officials, and the Medical Personnel responsible for providing medical treatment on behalf of Carbon County.

76.     Rawlins was deprived of mental health care for a treatable condition that is not life threatening particularly when deprived of freedom of movement and supposed under observation. Because of the deliberate indifference demonstrated by all Defendants, Rawlins, on suicide watch, was able to rig a bed sheet to his metal bunk and asphyxiate himself when he was to be observed every 15 minutes. The unnecessary suffering over the course of two days leading up to his death constitutes a serious deprivation of Jeremy Rawlins' constitutional rights.

18

77.     All Defendants were state actors who deliberately deprived Rawlins of medical care to abate his depression and suicidal vulnerability. Despite his obvious symptoms, he was purposefully neglected, particularly on October 6, 2022 when he was not observed by Correctional Officer Shorten for at least two hours and took his own life by strangling himself with a bed sheet. Such behavior is in violation of Rawlins' constitutional rights and not only demonstrates deliberate indifference but may constitute malicious abuse.

78.     It is averred, and therefore believed, that a reasonable prison official would comprehend that denying Rawlin's treatment, while serving as a witness to the mental deterioration which was well known the Warden and his subordinates, would result in serious physical consequences for Rawlins. Such action by all Defendants violated Rawlins right to be free from cruel and unusual punishment under the Eighth Amendment by demonstrating deliberate indifference to a medical need in also direct violation of his Due Process rights under the Fourteenth Amendment as a Pre-trial detainee. If Jeremy Rawlins is deemed to be convicted given that he was initially detained on an outstanding warrant for a prior conviction, then his Eighth Amendment rights were violated as aforesaid.

WHEREFORE, plaintiff demands judgment against all Defendants in the

following Prayer for Relief:

1. A ruling that the defendants' conduct was unconstitutional in violation of the Fourteenth and/or Eighth Amendment;

2. Compensatory damages from the Defendants for their unlawful, wanton, and depraved conduct;

3. Punitive damages against the defendants in their individual capacities

4. Pursuant to 42 U.S.C. § 1988, an award of reasonable attorney fees;

5. Such other and further relief as the court deems just and proper.

WHEREFORE, the Plaintiff demands judgment against the

Defendants in an amount to be determined by a jury and such other and further

relief as this Court deems just and proper.

## COUNT III

### Eighth Amendment and/or Fourteenth Amendment Vulnerability to Suicide Claim Against Supervisory Defendants in their Individual Capacities

79.     Plaintiffs incorporate by reference paragraphs 1-78  as though the same were fully here set forth at length.

80.     Defendants Youngkin, Gessat, George, and Shubeck were responsible for authorizing, condoning, implementing, and acquiescing in policies and practices that were deliberately indifferent to prisoners who were vulnerable to suicide. These policies and practices caused the death of Jeremy Rawlins. These policies and practices include but are not limited to:

• The use of solitary confinement on prisoners with serious mental illness and those vulnerable to suicide despite Defendants' knowledge that such conditions worsened their mental health problems and carried with them the threat of self-harm and suicide;

• Imposing solitary confinement on prisoners with serious mental illness and those vulnerable to suicide without any input from mental health staff about the psychological risks and harms this entailed;

• Failure to ensure staffing levels that were medically necessary to ensure that mental health staff could meet the needs of prisoners with serious mental illness and those who were vulnerable to suicide;

• Operating a system of mental health care that provided an inadequate and inferior standard of care for non-medical reasons, severely limiting or refusing to provide drug and alcohol counseling, psychological counseling, and group or vocational therapy, as well as not providing clinical assessments with the frequency and in the conditions that are clinically indicated and medically necessary; inadequate monitoring of the effectiveness of medications; and use of medication as a substitute for more effective treatments.

• Ignoring evidence of increased rates of self-harm, suicide attempts, and suicides by those with serious mental illness and those vulnerable to suicide in solitary confinement until after Jeremy's death.

WHEREFORE, plaintiff demands judgment against all Defendants in the following Prayer for Relief:

A ruling that the defendants' conduct was unconstitutional in violation of the Fourteenth and/or Eighth Amendment;

1. Compensatory damages from the Defendants for their unlawful, wanton, and depraved conduct;

2. Punitive damages against the defendants in their individual capacities

3. Pursuant to 42 U.S.C. § 1988, an award of reasonable attorney fees;

4. Such other and further relief as the court deems just and proper.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount to be determined by a jury and such other and further relief as this Court deems just and proper.

## COUNT IV

### Eighth Amendment and/or Fourteenth Failure to Train Claim Against Supervisory Defendants in their Individual Capacities

81.     Plaintiffs incorporate by reference paragraphs 1-80 as though the same were here fully set forth at length.

82.     Defendants Youngkin, Shubeck, Gessat, and George failed to train Correctional staff at the Carbon County Correctional Facility, in particular, Nicolas Shorten on how to manage prisoners with serious mental illness and those that were vulnerable to suicide in a manner that would not cause mental health injuries, including psychological pain, decompensation, self-harm and suicide.

83.     Defendants were deliberately indifferent to the need to train Correctional and medical personnel on how to manage prisoners with serious mental illness and those who were vulnerable to suicide despite knowing that the lack of training received by Correctional personnel in this matter caused serious risks and harms to those with mental illness and those who were vulnerable suicide.

84.     The failure to train led to Jeremy Rawlins' death. The training that supervisory Defendants failed to provide includes but is not limited to:

• Training on how to recognize behaviors and patterns of behavior that are indicative of serious mental illness.

• Training on how to de-escalate conflict with prisoners who have serious mental illness.

• Training on the adverse psychological impact of solitary confinement upon those with serious mental illness and those vulnerable to suicide.

• Training on suicide prevention.

• Training on the importance and necessity of consulting with mental health staff when a prisoner with serious mental illness or a vulnerability to suicide engages in problematic behavior, rule violations, or manifests symptoms of their serious mental health condition that suggest a need for intervention.

85.    Knowing of the prior suicides, suicide attempts, and incidents of self-harm in the solitary confinement units at the Carbon County Correctional Facility, Defendants Youngkin, Shubeck, Gessat, and George acquiesced in a practice of failing to train personnel in suicide prevention, management of prisoners with serious mental illness and those vulnerable to suicide, or consultation with mental health staff prior to placing prisoners with mental health issues in isolation. The need for more training was obvious and the failure to conduct this type of training resulted in Jeremy's death.

WHEREFORE, plaintiff demands judgment against all Defendants in the following Prayer for Relief:

A ruling that the defendants' conduct was unconstitutional in violation of the Fourteenth and/or Eighth Amendment;

1.   Compensatory damages from the Defendants for their unlawful, wanton, and depraved conduct;

2.   Punitive damages against the defendants in their individual capacities

3.   Pursuant to 42 U.S.C. § 1988, an award of reasonable attorney fees;

4.   Such other and further relief as the court deems just and proper.

Such other and further relief as the court deems just and proper.

WHEREFORE, the Plaintiff demands judgment against the Defendants in an amount to be determined by a jury and such other and further relief as this Court deems just and proper.

26

## COUNT VI

## SURVIVAL ACTION

86.     The allegations set forth in Paragraphs 1 through 85 are incorporated herein, as though fully set forth at length.

87.     Plaintiffs bring the survival action under 20 Pa. CSA §3373 and 42 Pa. CSA §8302.

88.     As a direct and proximate result of the Defendants acts and omissions, Decedent suffered, and Defendants are liable to the Plaintiff for the following actions:

        a.     Decedent's pain and suffering from the time of his injuries and the time of his death;

        b.     Decedent's total estimated future earnings less his estimated cost of personal maintenance;

        c.     Decedent's loss of retirement and social security income;

        d.     Decedent's other economic losses suffered as a result of his death;

        e.     Decedent's loss of enjoyment of life.

WHEREFORE, the Plaintiffs demand judgment and damages against the Defendants in an amount to be determined by a jury.

## COUNT VI

## WRONGFUL DEATH

89.     The allegations set forth in paragraphs 1through 88 are incorporated by reference, as though the same were here fully set forth at length.

90.     The Plaintiffs bring this action pursuant to the Pennsylvania Wrongful Death Act, 32 Pa. CSA. §8301 and Pa. R.C.P. §2202(a).

91.     The Decedent is survived by his wife, Megan Rims who is entitled to recover damages for his death.

92.      The Decedent did not bring any action for personal injury during his lifetime, and no other action from the death of Decedent has been commenced against the Defendants.

93.     As a direct and proximate result of the Defendants aforesaid acts, the Plaintiff, Megan Rims, Administrator of the Estate of Jeremy Scott Rawlins, sets forth that the Defendants are liable to her for following damages:

        a.    The funeral expenses for the Decedent;

        b.    Expenses and administration related to Decedent's injuries;

        c.    The Plaintiff's deprivation and injury as a result of the

28

loss of pecuniary loss of support, consortium, comfort, counsel, aid, association, care, and services of the Decedent; and

d.      Such other damages as are permissible under the wrongful death act.

WHEREFORE, the Plaintiff demands judgment and damages against

the Defendants in an amount to be determined by a jury.

PURSUANT TO F.R. CIV. P 38, A JURY TRIAL IS

DEMANDED TO EACH AND EVERY COUNT OF THIS COMPLAINT. A

JURY OF TWELVE IS DEMANDED.


Respectfully submitted,
Moore Becker Smarto & Acosta, P.C.


_/s/John P. Smarto
JOHN P SMARTO, ESQ.
PA I.D. 58293
john@moorebecker.com
*Attorneys for Plaintiff, Megan Rims*
*Administrator of the Estate of Jeremy Scott Rawlins*
*and Megan Rims.*
121 West Second Street
Greensburg, PA 15601
724-838-8422
724-838-0291

Dated: October 3, 2022